1  Gary C. Moss, Bar No. 4340
   mossg@jacksonlewis.com
2  Paul T. Trimmer, Bar No. 9291
   trimmerp@jacksonlewis.com
3  **JACKSON LEWIS LLP**
   3960 Howard Hughes Parkway
4  Suite 450
   Las Vegas, Nevada 89169
5  Tel:  (702) 921-2460
   Fax: (702) 921-2461
6
   *Attorneys for Defendant*
7  *Medco Health LLC*

8                      **UNITED STATES DISTRICT COURT**

9                       **FOR THE DISTRICT OF NEVADA**

10
   NAMIT BHATNAGAR, an individual,
11
                  Plaintiff,
12
                                            Case No.:  2:11-cv-00914-PMP-LRL
13          v.
                                            **DEFENDANT'S MOTION TO DISMISS**
14  MEDCO HEALTH, LLC, a foreign Limited
    Liability Company doing business in Nevada
15  DOES I through X and ROES I through X,

16              Defendants.

17
         Defendant Medco Health, LLC ("Medco" or "Defendant"), by and through its counsel,
18
    Jackson Lewis LLP, hereby moves to dismiss Plaintiff Namit Bhatnagar's Complaint in its
19
    entirety.  Mr. Bhatnagar's four causes of action, which he has entitled wrongful termination,
20
    breach of contract, breach of trust and good faith, and fraud and deceit, respectively, are
21
    preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and should
22
    be dismissed.  In addition, even if the Court did not find that all of the claims are preempted, it
23
    must still dismiss Mr. Bhatnagar's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  The four
24
    causes of action fail to state claims upon which relief could be granted.
25

26

27

28

JACKSON LEWIS LLP
  LAS VEGAS

1
2

This request is based on the attached Memorandum of Points and Authorities, all pleadings and documents on file with the Court, and any argument that the Court deems proper.

3

Dated this 20th day of June, 2011.

4

JACKSON LEWIS LLP

5

6
7
8

_____/s/ Paul T. Trimmer_____
Gary C. Moss, Bar No. 4340
Paul T. Trimmer, Bar No. 9291
3960 Howard Hughes Parkway, Suite 450
Las Vegas, Nevada 89169

9

*Attorneys for Defendant*

10

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

11

**I.    INTRODUCTION**

12
13
14
15
16
17
18
19
20

Mr. Bhatnagar is a former Medco Customer Service Representative.   As a customer service representative, he was represented by the Retail, Wholesale and Department Store Union – United Food and Commercial Workers Union Local 1102 (the "Union" or "Local 1102").   As such, at the time of his discharge, the terms and conditions of his employment were governed by a collective bargaining agreement (the "CBA" or the "Agreement") between Medco and Local 1102.   *See* Exhibit A (relevant sections of the May 17, 2007-May 16, 2010 collective bargaining agreement).

21
22
23
24
25
26
27
28

Mr. Bhatnagar's Complaint contains four causes of action: (1) wrongful termination; (2) breach of contract; (3) breach of trust and good faith; and (4) fraud and deceit.   Each of these claims is, at bottom, predicated on the allegation that Mr. Bhatnagar's May 15, 2009 discharge lacked just cause and violated the terms and conditions of the collective bargaining agreement. The law is clear.   Such claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, because the CBA "can reasonably be said to be relevant to the resolution of the dispute."   *Firestone v. Southern California Gas Co.*, 281 F.3d 801, 802 (9th Cir. 2002).

Because Mr. Bhatnagar did not exhaust his contractual remedies, and the claims would be time barred by Section 301's six month statute of limitations, the lawsuit should be dismissed.

Even if the claims were not preempted, however, the Court should still dismiss them pursuant to Fed. R. Civ. P. 12(b)(6).  As set forth in more detail below, Mr. Bhatnagar's first, third and fourth claims, for wrongful termination, good faith and fair dealing, and fraud, fail as a matter of law and should be dismissed with prejudice.  Plaintiff's second claim, for breach of contract, is supported by nothing more than legal conclusions, and therefore, it too must be dismissed.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 545 (2007).  "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not satisfy this standard.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* Rather, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  In short, a plaintiff's factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570.  If they fail to do so, the claims should be dismissed.

## III.   STATEMENT OF FACTS[1]

Mr. Bhatnagar is a former Medco customer service representative who was terminated on

---

[1]   Defendant disputes the claims in the Complaint.  For purposes of a motion to dismiss, however, the Court must take Plaintiff's allegations as true.  Thus, the summary of facts set forth below is drawn exclusively from the Complaint.  The only additional information set forth in this factual summary relates to the attached collective bargaining agreement.  It is well-established that such materials can be considered when a motion is brought pursuant to Section 301 of the LMRA.  *See, e.g., Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002).

May 15, 2009 for, among other things, allegedly disconnecting customer calls.  Compl. ¶¶ 5-9.

As a customer service representative in the call center, Mr. Bhatnagar was represented by the Union, and at the time of his discharge, the terms and conditions of his employment were governed by a collective bargaining agreement.  *See* Ex. A.  The collective bargaining agreement contained a variety of provisions which covered the full spectrum of the employment relationship between members of the bargaining unit, such as Mr. Bhatnagar, and Medco.  *See id.*

The provisions of Articles 9, 10 and 11 are specifically relevant to this case.  Article 9 of the CBA limits the Company's ability to discharge members of the bargaining unit to situations where the Company has "just cause."  *Id.*  Articles 10 and 11 of the CBA set forth detailed grievance and arbitration procedures for resolving alleged violations of the CBA, including allegedly improper terminations.  *Id.*  Any dispute between Medco and the Union regarding the interpretation or application of the CBA is subject to mandatory arbitration.  *Id.*  If an employee disputes disciplinary action, including discharge, the CBA requires the employee to lodge a grievance within fifteen days of the disciplinary action or the grievance is barred.  *Id.*

Plaintiff's first cause of action is for wrongful termination.  Compl. at ¶¶ 14-30.  Mr. Bhatnagar claims that Medco had a "duty … to provide [him with] the employment letter/agreement … explaining the **terms and conditions**" of his employment but that Medco failed to do so.  Compl. at ¶ 16 (emphasis added). Along the same lines, Mr. Bhatnagar claims that he did not receive copies of Medco's "rules and policy", and that Medco is an "LLC and it must have some written rule, regulations and policies."  *Id.* ¶ 24.  Mr. Bhatnagar alleges that his termination was "wrongful" because there is no evidence he violated any written rules or policies and because Medco failed to consider his performance history.  *Id.* at ¶¶ 22-30.

Mr. Bhatnagar's second cause of action is for breach of contract.  Compl. at ¶¶ 31-40.  As noted above, as a customer service representative, the terms and conditions of Plaintiff's

employment were governed by the CBA attached as Exhibit A.  Plaintiff asserts that it was Medco's "duty … to provide the employment letter and the copy of the agreement to the Plaintiff explaining the terms and conditions of the employment" but that the agreement was never provided to him.  *Id.* at ¶¶ 33-34.  He also claims that his termination constituted a breach of the agreement.  *Id.* at ¶¶ 36-40.

The third claim in the Complaint is for "breach of trust and good faith."  Compl. at ¶¶ 41-50.  This cause of action is also based on Mr. Bhatnagar's termination.  *Id.* at ¶¶ 42-48.  He alleges that his discharge was a breach of "trust and good faith" because it was premised on an allegedly "false statement" and "manipulated" documents.  *Id.*

Mr. Bhatnagar characterizes his fourth cause of action as a claim for "fraud and deceit."  Compl. at ¶¶ 51-56.  As with his first, second and third causes of action, the claim is predicated on Plaintiff's discharge.  *Id.*  Mr. Bhatnagar asserts his "termination is based on a false fabricated log report" and other "false and fabricated documents."  *Id.* at ¶¶ 52-54.  Without further elaboration, he claims that the alleged "manipulate[ion]" of those documents constitutes fraud.  *Id.* at ¶ 55.

## IV.   ARGUMENT

Mr. Bhatnagar's four causes of action cannot be resolved without interpretation and application of Articles 9, 10 and 11 of the Agreement.  They are therefore preempted by Section 301 and must be dismissed.  If the Court determines that any of Mr. Bhatnagar's claims are not preempted by Section 301, as set forth in more detail below, each of the claims must still be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### A.   Mr. Bhatnagar's First, Second Third and Fourth Causes of Action Are Preempted By Section 301 of the LMRA.

Section 301 of the LMRA gives Federal district courts exclusive jurisdiction over suits for violations of collective bargaining agreements, and to that end, it preempts any state law claim

that is "substantially dependant on the terms of an agreement made between parties to a labor contract[.]" *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).  When deciding whether a claim is preempted under Section 301 of the LMRA, a court must engage in a two part analysis. *See Burnside v. Kiewit*, 491 F.3d 1053, 1059 (9th Cir. 2007).  First, the court should make "inquiry into whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA.  If the right exists solely as a result of the CBA, then the claim is preempted, and . . . [the court's] analysis ends there." *Id.* (citations omitted).  Second, even if the right asserted "exists independently of the CBA, . . . [the court] must still consider whether it is nevertheless 'substantially dependent on analysis of a collective bargaining agreement.'" *Id.* (citation omitted).  In short, state law claims like those asserted by Mr. Bhatnagar are preempted "if the plaintiff['s] claim is either grounded in the provisions of the labor contract *or* requires interpretation of it." *Id.* at 1059; *see also Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008); *Firestone*, 281 F.3d at 802 (state law claims are preempted when interpretation of an existing provision of the CBA "can reasonably be said to be relevant to the resolution of the dispute"); *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988) (Section 301 preempts state claims based upon obligations created by a collective bargaining agreement).

### 1.     Plaintiff's wrongful termination claim is preempted.

Mr. Bhatnagar's cause of action for wrongful termination is clearly preempted.  The Ninth Circuit has repeatedly held that when brought by an employee who was subject to a collective bargaining agreement, such claims depend on allegations that the employee's termination violated the good cause provision in the relevant CBA.  *See, e.g., Hyles v. Mensing*, 849 F.2d 1213, 1216 (9th Cir. 1988)As such, the claim is "inextricably intertwined with consideration of the terms of the labor contract'" and thus preempted by federal law.  *See id.*; *see also Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1049 (9th Cir. 1987) ("Resolution of [plaintiff's] claims

[of intentional and negligent infliction of emotional distress] . . . necessarily entails examination and interpretation of the [collective bargaining] agreement, and these claims are also preempted."); *Grayson v. Titanium Metals Corp.*, Case No. 2:08-cv-1874, 2009 U.S. Dist. LEXIS 7235, at *2-3 (D. Nev. Jan. 30, 2009) (holding that although claims such as wrongful discharge "appear to be framed under state law, they are clearly preempted") (citing *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S. Ct. 1048 (1976)).

There are no unique allegations or circumstances in this case that would allow the Court to reach a different result.  The factual contentions in Mr. Bhatnagar's Complaint make it clear that he is alleging that his termination was "wrongful" for three reasons.  First, because the termination was inconsistent with or not supported by Medco's policies and procedures as he understood them.  *See* Compl. ¶¶ 21-27.  Second, because he had no notice that his conduct violated Medco's policies and procedures because Medco allegedly failed to provide him with copies of those rules.  *Id.* at ¶¶ 22-25.  Third, because Medco allegedly failed to consider his eight years of employment and allegedly clean disciplinary record.  *Id.* at ¶ 28.  These allegations, taken together, confirm that Plaintiff's wrongful termination claim depends on an alleged violation of the just cause provision contained in Article 9 of the CBA.  The claim cannot be resolved without interpreting and applying the Agreement.

Because Mr. Bhatnagar's claim arises from the CBA, and because a determination of whether Medco had "just cause" for discharging Mr. Bhatnagar would require the Court to interpret and apply the collective bargaining agreement, Plaintiff's first cause of action is preempted.  *See, e.g., Hyles*, 849 F.2d at 1216; *see also Sewell v. Genstar Gypsum Products Co., Div. of Domtar Gypsum, Inc.*, 699 F. Supp. 1443, 1449 (D. Nev. 1988) ("Plaintiff's wrongful discharge claim, whether framed in terms of breach of Collective Bargaining Agreement, breach of individual employment contract, or breach of implied covenant of job security, is governed by

the terms of the Collective Bargaining Agreement, and is therefore preempted by § 301 of the LMRA.").

### 2.     Plaintiff's breach of contract claim is preempted.

Mr. Bhatnagar's claim for breach of contract is preempted for similar reasons.[2]  Although it is not clear if Mr. Bhatnagar is referring to the collective bargaining agreement or some other individual agreement, the Ninth Circuit has repeatedly held that "because any 'independent agreement of employment [concerning a job position covered by the CBA] could be effective only as part of the collective bargaining agreement,' the CBA controls and the contract claim is preempted." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) (quoting *Young v. Anthony's Fish Grottos*, 830 F.2d 993, 997 (9th Cir. 1987)).

Here, Mr. Bhatnagar's allegations refer implicitly to the collective bargaining agreement's just cause provision, and it appears that he believes that provision was breached because Medco failed to place him on notice that his conduct constituted misconduct.  Compl. at ¶¶ 31-40.   It is impossible to resolve a claim that Mr. Bhatnagar's termination violated the CBA without interpreting and applying the just cause provision set forth in Article 9 of the Agreement.   As such, the claim is preempted and should be dismissed.  *See id.*; *see also Firestone*, 281 F.3d at 802; *Burnside*, 491 F.3d at 1059; *Sewell*, 699 F. Supp. at 1449.

### 3.     Plaintiff's good faith and fair dealing claim is preempted.

Mr. Bhatnagar's claim for "breach of trust and good faith" is virtually indistinguishable from his claims of wrongful termination and breach of contract.  *Compare* Compl. ¶¶ 14-30 and 31-40 *with* 41-50.  Once again, the allegations are predicated on his discharge and revolve around whether Medco had sufficient proof – in other words, "cause" – for terminating him in

---

[2]     Mr. Bhatnagar's claim is not framed as a Section 301 hybrid action.  *See, e.g., DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151 (1983).  Even if it were, the claim would still be subject to dismissal.   Although, as a federal claim, it would not be preempted, it would nevertheless be time-barred by Section 301's six month statute of limitations.  *See id.*

May 2009.  *See* Ex. A (Article 9); *see* Compl. at ¶¶ 41-50.  Because such allegations conclusively demonstrate that resolution of Mr. Bhatnagar's claim is "inextricably intertwined with consideration of the terms of the labor contract," the claim is preempted.  *Allis-Chalmers Corp.*, 471 U.S. at 211-212.  Indeed, the Ninth Circuit has repeatedly held that the covenant of good faith and fair dealing is preempted whenever an employee is covered by a collective bargaining agreement which contains terms concerning job security.  *See, e.g., Cook v. Lindsay Olive Growers*, 911 F.2d 233, 238 (9th Cir. 1990); *Young*, 830 F.2d at 999-1001 (explaining rationale for finding that such claims are preempted under Section 301); *see also Sanders v. Culinary Workers Union Local No. 226*, 804 F. Supp. 86, 99 (D. Nev. 1992).

Article 9 of the CBA expressly limits Medco's ability to discharge members of the bargaining unit such as Mr. Bhatnagar to situations where Medco can establish that it has good cause.  As such, controlling Ninth Circuit authority requires Plaintiff's third cause of action to be dismissed.  *See id.*; *see also Young*, 830 F.2d at 999-1001.

### 4.    Plaintiff's fraud claim is preempted.

Finally, Mr. Bhatnagar's fourth claim for "fraud and deceit" is also subject to preemption.  Although the claim is framed in a slightly different way from the first three causes of action described above, the cause of action is nonetheless premised on the same fundamental contention: that Medco wrongfully terminated Mr. Bhatnagar.  The only difference is that Plaintiff claims that Medco lacked cause for terminating him because the termination was purportedly based on documents that Medco allegedly forged and/or fabricated.[3]  *See* Compl. at ¶¶ 51-56.

In other words, Mr. Bhatnagar appears to claim that Medco breached the just cause provision of the CBA because the evidence supporting his discharge was inadequate.  If such

---

[3]    As described in Section B.4 below, the allegations in this cause of action fail to establish a *prima facie* case of fraud.

allegations sound in fraud at all, they depend on a contention that Medco's promise in Article 9 to discharge or discipline only when it has just cause is a misrepresentation.  Because resolution of such a claim would require the Court to look to and interpret Article 9 of the Agreement, and potentially evaluate the parties' intent, the claim is preempted.  *See, e.g., Aguilera*, 223 F.3d at 1016 (fraud claim preempted); *Stone v. Writer's Guild of America West, Inc.*, 101 F.3d 1312, 1314 (9th Cir. 1996) (claim for fraud properly dismissed as preempted by federal labor law when claim was "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.").

**5.     Plaintiff's four causes of action must be dismissed with prejudice.**

In sum, there can be no dispute that each of Plaintiff's four causes of action depends on interpretation and application of the CBA for resolution.  It is well-settled that such claims "must either be treated as a Section 301 claim . . . or [be] dismissed as preempted by federal law contract law."  *Allis-Chalmers Corp*, 471 U.S. at 220.  Indeed, even if Plaintiff had exhausted his contractual remedies, and his claims could be properly recharacterized as claims under Section 301, such claims would be time-barred.  Section 301 has a six-month statute of limitations and Mr. Bhatnagar was discharged more than two years ago on May 15, 2009.  *See, e.g., DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151 (1983); *Inlandboatmen's Union of the Pacific v. Dutra Group*, 279 F.3d 1075, 1083-84 (9th Cir. 2002).  Accordingly, the Complaint should be dismissed in its entirety.

**B.     Even If The Court Were To Conclude That One Or More Of Mr. Bhatnagar's Causes Of Action Is Not Preempted, The Claims Must Still Be Dismissed As A Matter Of Law.**

Even if one or more of Plaintiff's state law claims could survive preemption, they must still be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  In each case, the allegations set forth in the Complaint are insufficient to establish a plausible claim under Nevada law.

1             **1.**       **Plaintiff's wrongful discharge claim fails as a matter of law.**

Mr. Bhatnagar's First Cause of Action, for wrongful termination, plainly fails to state a claim for relief under Nevada law.  In this state, "tortious discharge actions are severely limited to those rare and exceptional cases where the employer's conduct violates strong and compelling policy." *Sands Regent v. Valgardson*, 105 Nev. 436, 440 (1989); *see also State v. Eighth Judicial District Court (Anzalone)*, 118 Nev. 151-52 (2002); *Bigelow v. Bullard*, 111 Nev. 1178, 1181 (1995) ("The only exception to the general rule that at-will employees can be dismissed without cause is the so-called public policy exception discussed in Western States, a case in which tort liability arose out of an employer's dismissing an employee for refusing to follow his employer's orders to work in an area that would have been dangerous to him.").

Here, Mr. Bhatnagar has alleged that he was discharged because he violated call handling rules and disconnected calls with Medco's customers.  He disputes these allegations, and even alleges that Medco relied at least in part on fabricated documents.  Even if those allegations are true, however, they do not state a claim for tortuous discharge as a matter of law.  The Nevada Supreme Court has allowed wrongful discharge claims to proceed only when: 1) an employee was terminated for refusing to engage in unlawful conduct, *Allum v. Valley Bank of Nevada*, 114 Nev. 1313, 1321 (1998); 2) an employee was terminated for refusing to work in unreasonably dangerous conditions, *Western States v. Jones*, 107 Nev. 704 (1991); or 3) when an employee was terminated for filing a workers compensation claim, *Hansen v. Harrah's*, 100 Nev. 70 (1984).  Plaintiff's allegations do not fit within any of these protected categories and given the facts of this case, it is unlikely that the Nevada Supreme Court would expand a narrow exception to cover the Plaintiff's claim, particularly since it has similar claims on a number of occasions.  *See, e.g., Bigelow*, 111 Nev. 1178 at 1187.

Given the current state of Nevada law, Because Mr. Bhatnagar's factual allegations do not

"raise a right to relief above the speculative level," his claim must be dismissed. *Twombly*, 550 U.S. at 570.  Accordingly, the claim must be dismissed.

### 2.    Plaintiff's breach of contract claim fails as a matter of law.

To establish a breach of contract under Nevada law, a party must show "(1) the existence of a valid contract, (2) performance or excuse for non-performance of the contract, (3) breach, and that (4) damages have been sustained as a result of the breach." *Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259 (2000).  Without this basic information, Plaintiff cannot establish a plausible breach of contract claim.  *See, e.g., Hester v. Vision Airlines, Inc*., Case No. 2:09-cv-00117-RLH-RJJ, 2009 U.S. Dist. LEXIS 122287, at *23-24 (D. Nev. Dec. 15, 2009).

Here, the Complaint contains little more than empty legal contentions that an unidentified agreement has been breached and other "conclusory assertions devoid of any factual support."  *Id.*  Mr. Bhatnagar has failed to attach or otherwise identify the contract that was allegedly breached. He has also failed to set forth the terms and conditions that were allegedly violated when he was discharged.[4]  *See* Compl. at ¶¶ 31-40.  Even pro se plaintiffs must satisfy the pleading requirements set forth in Fed. R. Civ. P. 8(a) in order to properly state a claim for relief.  *See Kerr v. Wanderer & Wanderer*, 211 F.R.D. 625, 629 (D. Nev. 2002); *Kahre v. United States*, No. CV-S-0200375-LRH-LRL, 2003 WL 21001012, at *2 (D. Nev. March 10, 2003) ("[C]ourts should not assume the role of advocate for the pro se litigant.").  Because the allegations in Mr. Bhatnagar's Complaint are merely consistent with, and not demonstrative of a breach of contract, he has failed to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570.

---

[4]    As noted above, the Ninth Circuit has concluded that whether a plaintiff is alleging the existence of an individual contract or a collective bargaining agreement is irrelevant for purposes of Section 301.  So long as the employee  was subject to a collective bargaining agreement, a claim for breach of contract is preempted.  *See* Section IV.A.2, *supra*.  At common law, however, the failure to allege the existence of a particular contractual obligation and a breach of that obligation is fatal.

3.      **Plaintiff's claim for breach of the duty of good faith and fair dealing fails as a matter of law.**

Like the tort of wrongful discharge, under Nevada law, tort liability for breach of the covenant of good faith and fair dealing is limited to "rare and exceptional cases," *K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364, 1370 (1987), and requires a plaintiff to show a special element of either (1) reliance or (2) fiduciary duty because the defendant was in a superior or entrusted position. *A.C. Shaw Constr. v. Washoe County,* 105 Nev. 913, 784 P.2d 9, 10 (1989). In fact, the Nevada Supreme Court specifically held in *Ponsock* that its holding was confined to a "fact-specific instance of discharge by a large, nationwide employer of an employee in bad faith for the improper motive of defeating contractual retirement benefits." *Ponsock*, 103 Nev. at 48; *see also Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 376 (1999) (denying application and extension of *Ponsock*).

Mr. Bhatnagar's allegations plainly fail to establish the kind of "rare and exceptional" facts that were present in *Ponsock*.  There is no allegation that he was a long term employee who was terminated (1) in violation of a contract and (2) for the purpose of defeating contractual benefits. *Compare* Compl. at ¶¶ 41-50 *with Ponsock*, 103 Nev. at 48.  Nor are there allegations that would suggest the presence of a fiduciary relationship and reliance on that fiduciary relationship.  *See id.* At most, the allegations, if taken as true, suggest that Medco terminated Mr. Bhatnagar on the basis of flawed evidence and in violation of the just cause provisions of the collective bargaining agreement. *See* Compl. at ¶ 49.  That is insufficient to state a claim for breach of the tort of good faith and fair dealing.

4.      **Plaintiff's Fourth Cause of Action fails to state a claim for common law fraud under Nevada law.**

Plaintiff's fourth cause of action is for fraud.  In Nevada, the elements of common law fraud are:  (1) a false representation by the defendant; (2) defendant's knowledge or belief that the

representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance.  *See Saterbak v. MTC Fin. Inc*., 2011 U.S. Dist. LEXIS 11872, 14-16 (D. Nev. Feb. 4, 2011) (citing *Bulbman, Inv. v. Nevada Bell*, 108 Nev. 105, 825 P.2d 588, 592 (Nev. 1992).

In addition, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  To comply with the rule, the allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Id.* (citing *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404 (9th Cir. 1996)).

In this case, Mr. Bhatnagar has neither identified any particular misrepresentations made to him by Medco, nor has he detailed how he was induced to act or refrain from acting in reliance upon such misrepresentations.  *See* Compl. ¶¶ 51-56.  Indeed, he merely alleges that Medco utilized fabricated documents when it attempted to justify his discharge.[5]  An allegedly forged disciplinary document is not an affirmative misrepresentation; and, Mr. Bhatnagar certainly did not rely on the allegedly forged documents **to his detriment**, which is the sine qua non of a claim of fraud.  *See id.*

In short, Plaintiff's fourth cause of action is nothing more than a generalized allegation of fraud.  That is insufficient to survive a motion to dismiss.  *See id.*; *see also Sattari v. Citimortgage*, Case No. 2:09-cv-0769-RLH-GWF, 2011 U.S. Dist. LEXIS 36748, at *8-9 (D. Nev. 2011) (dismissing fraud claim because plaintiff failed to provide "an account of the time,

_____

[5]    Medco disputes this allegation, but for purposes of a motion to dismiss, it must be treated as true.

place, and specific content of the false representations, as well as the identities of the parties to the misrepresentations."); *Desert Palace, Inc. v. Ace Am. Ins. Co.*, Case No. 2:10-cv-1638-RLH-LRL, 2011 U.S. Dist. LEXIS 21603, at *12-15 (D. Nev. Mar. 1, 2011) (same); *Huggins v. Quality Loan Servicing, LP*, Case No. 2:10-cv-1232-LDG-PAL, 2011 U.S. Dist. LEXIS 12639, at *15-16 (D. Nev. Jan. 27, 2011) (same).

## V.    CONCLUSION

For the reasons set forth above, Plaintiff's four causes of action are preempted by Section 301 of the LMRA and must be dismissed with prejudice.  If the Court concludes otherwise, it must still dismiss the Complaint in its entirety because, based on the allegations in the Complaint, Plaintiff's claims fail as a matter of law.

Dated this 20th day of June, 2011.

JACKSON LEWIS LLP

_____/s/ Paul T. Trimmer_____
Gary C. Moss, Bar No. 4340
Paul T. Trimmer, Bar No. 9291
3960 Howard Hughes Parkway, Suite 450
Las Vegas, Nevada 89169

*Attorneys for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to Special Order #109, counsel of record registered for the CM/ECF system have been served with the foregoing **MOTION TO DISMISS** by electronic means.  In addition, pursuant to Fed. R. Civ. P. 5(b), I hereby certify that the service of the same was made this day by depositing a true copy of the same for mailing at Las Vegas, Nevada, addressed to:

Namit Bhatnagar
273 Great Duke Avenue
Las Vegas, NV 89183

Dated this 20th day of June, 2011.

/s/ Rae J. Christakos
An employee of JACKSON LEWIS LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

ARTICLES OF AGREEMENT

BETWEEN

MEDCO HEALTH, L.L.C.

AND

LOCAL 1102, R.W.D.S.U., U.F.C.W.

05/17/07 – 05/16/10

## TABLE OF CONTENTS

| ARTICLE | | Page |
|---|---|---|
| 1 | RECOGNITION | 1 |
| 2 | CHECK OFF | 2 |
| 3 | COOPERATION | 3 |
| 4 | MANAGEMENT OF OPERATIONS | 3 |
| 5 | STRIKES AND LOCKOUTS | 4 |
| 6 | HOURS OF WORK AND OVERTIME | 6 |
| 7 | SENIORITY | 8 |
| 8 | JOB CLASSIFICATIONS AND WAGE RATES | 11 |
| 9 | DISCIPLINE/DISCHARGE | 14 |
| 10 | GRIEVANCE PROCEDURE | 15 |
| 11 | ARBITRATION | 17 |
| 12 | HEALTH AND SAFETY COMMITTEE | 18 |
| 13 | LEAVE OF ABSENCE | 19 |
| 14 | DISCRIMINATION | 20 |
| 15 | SCOPE OF AGREEMENT | 21 |
| 16 | HOLIDAYS | 21 |
| 17 | PERSONAL TIME BANK | 24 |
| 18 | VACATIONS | 26 |

## TABLE OF CONTENTS

| ARTICLE | | Page |
|---|---|---|
| 19 | MEDICAL AND INSURANCE BENEFITS | 31 |
| 20 | RETIREMENT PLANS | 32 |
| 21 | MISCELLANEOUS | 33 |
| 22 | SUPERVISORY PERSONNEL | 34 |
| 23 | TERM OF AGREEMENT | 35 |
| | Appendix A (Covered Job Classification Effective 10/01/03) | 37 |



## AGREEMENT

THIS AGREEMENT, made and entered into at Las Vegas, Nevada, this 17th day of May 2007, by and between Medco Health, L.L.C, 6225 Annie Oakley, Las Vegas, Nevada 89120, hereinafter referred to as the "Company", and Local 1102, RWDSU., UFCW, hereinafter referred to as the "Union".

WHEREAS, the parties desire to effect and maintain harmonious relations between themselves and the employees;

WHEREAS, the parties recognize the critical and paramount importance of, and are mutually and unequivocally committed to maintaining the highest standards of service, quality and professional practice;

NOW, THEREFORE, on the basis of the foregoing preamble, and in consideration of the mutual promises contained herein, the parties agree as follows:

## ARTICLE 1 - RECOGNITION

1.1    In accordance with the parties' September 29, 1997 Letter of Agreement, which is incorporated herein by reference, the Company hereby recognizes the Union as the sole and exclusive representative for purposes of collective bargaining of a unit consisting of all regular full-time and part-time employees in the job classifications listed on Appendix A to this Agreement at its facilities located at 6225 Annie Oakley Drive, Las

22132



Vegas, Nevada 89120 and excluding all other employees and supervisors, managers and guards, as defined in the National Labor Relations Act.

    1.2    The Company recognizes the right of the Union steward(s) to represent the employees covered by this Agreement on any grievance that might occur. The steward may investigate grievances during regular straight time hours without loss of pay, provided that such activity is kept to a minimum and at a time during the day mutually agreed to by the steward and his/her supervisor.

## ARTICLE 2 - CHECK OFF

    2.1    The Company, to the extent permitted by applicable law, will deduct dues, as established by the Union, each pay period from the wages of Union members who consent in writing to such deduction.  Such deductions will commence as soon as reasonably practicable after the Company's receipt of the employee's written consent but in no event more than thirty (30) days thereafter.  The Company agrees to transmit these deductions to the Union not later than two (2) weeks after the end of the month to which they relate.

    2.2    The Union will indemnify and hold harmless the Company and/or any of its representatives or employees from any claim, cause of action, loss, expense (including attorneys' fees) or liability as a result of deductions made in accordance with this Article.

    2.3    All employees who apply will be admitted to membership in the Union on the same terms and conditions as those which were applicable to all employees now



22132

-2-



8.7     Any employee who, after the completion of one (1) year of continuous service, is temporarily assigned to a higher paid classification in excess of four (4) hours in any one week (but not 4 hours in one day) shall receive the rate of pay specified for that classification for the hours worked in said higher classification for that week.

8.8     During the term of this Agreement, the Company, after discussion with the Union, may institute recognition programs and/or performance based compensation plans.  Such plans/programs may be applicable to some job classification(s) or work groups, and not others.  The Company may create, withdraw or modify such plans/programs from time to time.  In the event of disputes concerning the establishment or application of such plans/programs, the Company will confer in good faith with the Union in an effort to achieve a mutually satisfactory resolution. However, such disputes will not be subject to arbitration as final judgment in such matters must be made by the Company.

## ARTICLE 9 - DISCIPLINE/DISCHARGE

9.1     The Company shall have the right to discipline or discharge an employee for just cause.  If a regular employee believes that his/her discipline or discharge is unjust, such discipline or discharge shall be subject to adjustment between the Company and the Union according to Article 10.

9.2     This Article has no application to layoffs, retirement pursuant to a retirement plan now or hereafter established or modified by the Company (whether or



22132

not benefits are involved), or termination of employment for any reason other than by

discharge.


## ARTICLE 10 - GRIEVANCE PROCEDURE


10.1    A grievance is a dispute, claim or complaint involving the interpretation or

application of the specific, written terms of this Agreement.

10.2    The parties desire that grievances be settled as fairly and quickly as

possible.  Therefore, grievances shall be processed in accordance with the following

steps, and the applicable time limits shall be strictly applied:

  a. Step One: Within seven (7) calendar days of the
event giving rise to the grievance, or date of receipt of the
disciplinary action or when the Union or grievant should have
reasonably known of the facts underlying the issue or dispute,
whichever is later, the aggrieved employee shall verbally present
the grievance to his/her immediate supervisor.  The employee may,
if so desired, request his/her steward be present at the presentation
of the grievance.  The meeting shall take place within 7 calendar
days.  If the grievance is not resolved as a result of the Step One
meeting, the grievance shall be reduced to writing and submitted to
the Company within seven (7) calendar days of that meeting.  In
discharge cases, the Union will submit the written grievance within
seven (7) calendar days of being notified of the discharge, and the
matter shall proceed directly to Step Two.  Written grievances shall
be signed by both the Union and Grievant, if practicable, and will
identify the nature of the grievance and the provisions of the
contract that are alleged to have been violated.

  b. Step Two: The Company's Human Resources
representative and as appropriate, the Company's General
Manager or designee, will promptly meet and discuss the grievance
with the grievant and shop steward, within fifteen (15) days of the
receipt of the written grievance.  The Company will submit a written
answer to the grievance within seven (7) calendar days following

-15-

the Step Two meeting.  In the event the Company does not submit a written answer within this time frame, the grievance shall be deemed denied, and the Union may then proceed to Step Three.

      c.     <u>Step Three</u>: If the grievance is not resolved at Step Two, and the Union desires to appeal the matter to an impartial arbitrator, the procedure in Article 11 shall be followed.

10.3   No grievance concerning disciplinary action taken by the Company (including discharge) may be submitted to arbitration more than fifteen (15) calendar days after the submission to the Union of the Company's response at Step Two (or the expiration of the seven day response period); and no grievance concerning any other subject may be submitted to arbitration by either party more than thirty (30) calendar days after the submission to the Union of the Step Two response.  The Company and the Union, whenever requested in writing to do so by the other, shall grant one (1) automatic extension of the other's time at one or more steps during the processing of a grievance, which extension shall be for the same length of time as the original time period unless otherwise mutually agreed upon in writing.  Any extension (including the one (1) automatic extension) of the time limits must be in writing and submitted prior to the expiration of the applicable time limit.

10.4   For grievances filed on and after May 16, 2007, failure of the aggrieved party to process the grievance within the time limits specified in Articles 10 and 11 shall result in the grievance becoming untimely and void.


22132

## ARTICLE 11 - ARBITRATION

11.1   If either the Union or the Company desires to process a grievance, beyond the procedure outlined in Article 10, it shall be submitted to arbitration as provided in this Article.  It is expressly understood that the only matters which are subject to arbitration under this Article are grievances which were processed and handled in accordance with the grievance procedure and which involve a dispute as to the meaning of terms found in this Agreement or as to the existence of facts which affect the manner in which the terms found in this Agreement are applied.

11.2   The parties shall utilize the American Arbitration Association and abide by its Voluntary Labor Arbitration Rules in choosing the impartial arbitrator who will hear the specific grievance at issue.

11.3   The expense of the arbitrator, hearing room, reporter and written transcript shall be born equally by the parties; otherwise each party shall bear its own expenses.

11.4   The written transcript prepared by the reporter shall be the official record of the hearing.  The parties shall not make any audio or video recordings of any grievance meeting or arbitration hearing.

11.5   The Union or the Company, but not an individual employee, may invoke the arbitration procedure of this Article.

11.6   The Arbitrator's authority is specifically limited to determining the meaning of disputed terms or provisions actually found in this Agreement, or to determine disputed facts upon which an application of this Agreement depends.  The Arbitrator

-17-

shall not have any authority to decide any issue not specifically submitted to him/her or to interpret or apply the Agreement so as to change what can fairly be said to have been the parties' intent as determined by generally accepted rules of contract construction.  The Arbitrator shall not issue any decision that in practical or actual effect modifies, revises, detracts from or adds to any of the terms or provisions of this Agreement.  The parties' past practice will be considered in interpreting or applying terms or provisions of this Agreement only to the extent that the meaning of such disputed terms or provisions is ambiguous or cannot be clearly determined by applying generally accepted rules of contract interpretation.  Past practice may not be used so as to justify, or result in, what is in effect a modification of the written terms of this Agreement.  Under no circumstances does an arbitration board or an individual arbitrator have the authority to hear any claim or grievance that is untimely under the provisions of Articles 10 or 11 of this Agreement.

11.7   An Arbitrator's decision made in accordance with this Article which does not exceed his/her authority under Section 11.6 or violate public policy or statutory law, will be final and binding on both parties.

## ARTICLE 12 - HEALTH & SAFETY COMMITTEE

12.1   The parties will establish a Joint Health and Safety Committee.  The Committee will focus upon health and safety issues within the facility including



22132

**APPENDIX A**

<u>**COVERED JOB CLASSIFICATIONS**</u>

(As of May 17, 2007)

The job classifications covered by this Agreement shall be as follows:

Customer Service Representative

E-Customer Service Representative

Resolution Expert

Client Service Specialist

